Filed 3/18/24

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Ca.M., et al., Persons Coming Under the Juvenile Court Law. | B326320 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22CCJP04019A-E) |
| Plaintiff and Respondent, | |
| v. | |
| L.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

<sup>*</sup>    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, all but Part II.B of this opinion is certified for publication.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

In *In re I.J.* (2013) 56 Cal.4th 766, our Supreme Court explained that "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*Id.* at 773.) In this case, we follow this language in *I.J.*—an opinion that has not since been disapproved—to affirm the juvenile court's finding of dependency jurisdiction over defendant and appellant L.C.'s (Mother's) children. We also conclude, in the unpublished portion of our opinion, that Mother's challenge to the disposition orders removing the children from her custody is moot and does not warrant resolution.

## I. BACKGROUND

Mother has five children involved in this appeal: eight-year-old Ca.M., five-year-old Ch.M., three-year-old Cr.M., two-year-old Cl.M., and four-month-old Ce.M. (collectively, the Minors).[1]

On September 18, 2022, Father, Mother, Mother's sister V.P., and the four oldest Minors attended a "low-rider" car show in the City of Compton. During the drive home, Father began to yell at Mother, calling her names and accusing her of infidelity. Father then punched Mother several times in the face and she

---

[1]     These were Minors' ages at the initiation of dependency proceedings.

3

demanded he stop the vehicle and let her and the children out. As she was removing Cl.M. from her car seat, Father started to drive away, dragging Mother approximately two feet. Eventually, Father drove away with Cl.M. still in the vehicle. As a result of the incident, Mother sustained severe swelling, lacerations, and bruising to her face. Mother received medical treatment at the scene by paramedics.

When interviewed at the scene by deputies from the Los Angeles County Sheriff's Department, Mother advised Father had been drinking. Ca.M., Ch.M., and V.P. were also interviewed at the scene by deputies. They confirmed the argument between Father and Mother, Father's battery of Mother, and Father dragging Mother several feet with his vehicle. Ch.M. also advised Father was driving "drunk."

As the deputies were interviewing Mother and members of her family, Father returned. The deputies stopped him and he denied punching Mother, dragging her with his vehicle, or having a firearm during the incident. Mother positively identified Father as the man who assaulted her, but she declined the deputies' offer of an emergency protective order. Based on Mother's statement and the statements provided by Ca.M., Ch.M., and V.P., the deputies arrested Father.

Three days after Father's arrest, a social worker from the Los Angeles County Department of Children and Family Services (the Department) interviewed the two oldest children and Mother at the family home.

Ca.M. told the social worker that during the incident following the car show, Father not only struck Mother but also brandished a gun at her. Although that was not the first time he witnessed Father hitting Mother, it was the first time Ca.M. had

4

seen him point a gun at her. He directed the social worker to a shoebox in Mother's closet and explained that was where Father had stored his firearm. When the social worker inquired about holes in a bedroom door, Ca.M. explained that they were made by Father one time when he kicked and punched the door after Mother locked herself inside the room. Ca.M. denied suffering any physical abuse by Father or witnessing Father strike any of his siblings; he stated Father hit only Mother.

Ch.M. denied Father ever struck him or his siblings, but he confirmed Father hit Mother, which made Ch.M. cry. Ch.M. also corroborated Ca.M.'s statement that Father made the holes in the bedroom door by kicking it and striking it with his fist. In addition, Ch.M. said Father "drinks beers all day long" and kept a firearm in the home.

Mother confirmed the facts of the post-car show abuse that she previously related to the police. She denied any prior domestic violence, denied knowing Father kept a firearm in the home, and denied she was offered a domestic violence restraining order by Sheriff's deputies. Mother added she did not plan on seeking a restraining order due to the difficulty of going to court with five young children.

The social worker also interviewed, among others, Father, the maternal aunt V.P., and the detective investigating the case. Father affirmed he and Mother argued after the car show but he denied hitting Mother with his fists or dragging her with his vehicle; he attributed Mother's injuries to her falling out of the car while it was still moving. Father also denied hitting Mother on any previous occasion, any current use of alcohol or drugs, and owning a firearm. Father described Mother as an excellent parent and he and Mother as a very happy couple. V.P. told the

5

social worker Father was drunk on the day of the car show but refused to let Mother drive the family home. V.P. explained the incident following the car show was not the first time Father struck Mother and not the first time police became involved in a domestic dispute between them.[2] V.P. stated Mother is frightened of Father and "wants to leave but she's too scared to do so." The detective advised Mother had declined to cooperate with a criminal prosecution against Father and twice declined to seek a protective order against him.

The Department removed Minors from their parents' custody and filed a petition asking the juvenile court to assume dependency jurisdiction over Minors. As later amended, the petition alleged Minors were at substantial risk of suffering serious physical harm as a result of: their parents' history of engaging in violent altercations and Mother's failure to protect them by allowing Father to reside in the family home and have unlimited access to them (count b-1); Father's driving under the influence of alcohol on the day of the car show and Mother's failure to protect them from the risk that presented (count b-2); Father's history of substance abuse and Mother's failure to protect Minors (count b-3); and Mother and Father's failure to store a firearm and ammunition safely in the family home (count b-4).

At the initial hearing on the petition, the juvenile court detained Minors from their parents, ordered monitored visitation,

---

[2]    V.P.'s assertion about prior police intervention was confirmed by the social worker, who learned that the police had been called to the family home on three prior occasions to investigate domestic violence.

and set a jurisdiction and disposition hearing. That same day, Mother filed a request for a restraining order protecting her from Father.

In advance of the jurisdiction and disposition hearing, a Department investigator re-interviewed members of the family.

Mother continued to maintain the first time Father ever hit her was on the way home from the car show. She claimed that on the day of the car show she did not know Father was intoxicated until they got into Father's SUV to return home; she admitted, however, it was a mistake not to realize Father was intoxicated sooner—especially because she knew Father had previously been arrested for driving under the influence. Mother also admitted the holes in the bedroom door seen by a social worker were made by Father. Mother denied all knowledge of a firearm being kept in her home. She also stated she was currently separated from Father and did not plan to reconcile with him.

Ca.M. and Ch.M. reaffirmed their earlier statements about the incident following the car show and acknowledged Father scared them, especially when he was drunk and hit Mother. Ca.M. also explained that Mother knew Father kept a firearm in the house but did not want Minors to know about the gun.

Father declined to discuss the petition's allegations with the investigator, but he did state that he and Mother had separated in mid-September due to problems that pre-dated the incident following the car show and did not plan to reunite. Father advised he wanted Minors returned to Mother's custody.

At the jurisdiction and disposition hearing, held in December 2022, the juvenile court admitted all of the parties' proffered exhibits and took judicial notice of the court file. The court accepted Father's no contest plea to the petition's

allegations. After hearing argument from counsel for Mother, Minors, and the Department with regard to the petition's allegations against Mother, the court sustained all of the counts against her. Citing the "especially alarming" statements made by the two oldest Minors regarding the domestic violence, Father's alcohol and substance abuse, and both parents' carelessness in storing a firearm and its ammunition in the family home, the juvenile court found leaving Minors in their parents' care would pose a substantial danger to their physical health and emotional well-being. The court ordered Minors removed from both parents' custody and, due to Mother's dilatory pursuit of a protective order, issued a mutual "stay away" order for Mother and Father.

At the subsequent six-month review hearing (Welf. & Inst. Code,[3] § 366.21, subd. (e)), the juvenile court found Mother made substantial progress toward alleviating the causes which gave rise to jurisdiction and the release of Minors into her care would not create a substantial risk to their physical or emotional well-being. The court ordered Minors returned to Mother's custody under the continuing jurisdiction of the court and ordered the Department to provide her and Minors with family maintenance services.

## II. DISCUSSION

Mother challenges the sufficiency of the evidence for only one of the several jurisdiction findings the juvenile court made against her, specifically, the finding that she failed to protect Minors from a substantial risk of serious physical harm arising

---

[3] Undesignated statutory references that follow are to the Welfare and Institutions Code.

8

from Father's domestic violence. The other jurisdiction findings against her are uncontested—and with good reason in light of the evidence supporting them. We will briefly discuss why the juvenile court's substantial risk of serious physical harm finding arising from Mother's failure to protect from Father's drunk driving is supported by sufficient evidence and, following *I.J.*, *supra*, 56 Cal.4th 766, we therefore decline to discuss the sufficiency of the other allegations against Mother, including the one she challenges in this appeal.

Mother additionally argues the juvenile court's order removing the Minors from her custody was unjustified. The contention is moot because Minors have since been returned to her custody and we decline to exercise our discretion to decide the moot issue. (See generally *In re D.P.* (2023) 14 Cal.5th 266, 285-287.)

### A. We Need Not Discuss Mother's Challenge to the Domestic Violence Jurisdiction Finding Because Sufficient Evidence Supports the Failure to Protect from Drunk Driving Finding

In *D.P., supra,* 14 Cal.5th 266, our Supreme Court held reviewing courts have discretion to decide moot appeals from juvenile court dependency orders and must decide whether to exercise that discretion when asked to do so. (*Id.* at 287.) Our high court explained that appeals in dependency proceedings are "particularly prone to mootness problems" (*id.* at 284) and such problems may ""ha[ve] the undesirable result of insulating erroneous or arbitrary rulings from review"" (*id.* at 285). In discussing why it believed an avenue for discretionary review of moot issues should remain open, the *D.P.* court referenced a

situation we do not have in this case—where a juvenile court makes jurisdiction findings against both parents but only one appeals (making the appeal moot because jurisdiction over the child will continue regardless)—and the situation we do have in this case: where a juvenile court makes multiple adverse dependency findings against an appealing parent. (*D.P.*, *supra*, 14 Cal.5th at 283-284 ["Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot. [Citation.] The same is true where there are multiple findings against one parent; the validity of one finding may render moot the parent's attempt to challenge the others"].)

Although our Supreme Court recognized one valid finding against a parent will render the others moot in an opinion that holds courts must decide whether to exercise their discretion to decide moot issues, we do not read *D.P.* to require reviewing courts to invariably consider whether to exercise their discretion to decide a parent's challenge to one adverse jurisdiction finding even if there are other adverse findings against the parent that are uncontested. As we emphasized at the outset of this opinion, the Supreme Court in *I.J.* determined the Courts of Appeal can affirm a juvenile court's jurisdiction finding "if any one of the statutory bases for jurisdiction that are enumerated in the [dependency] petition is supported by substantial evidence" and "need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*I.J.*, *supra*, 56 Cal.4th at 773.) *D.P.* did not disapprove this language in *I.J.* (or any part of *I.J.*, a case *D.P.* never cites), and it accordingly remains good law. That means that so long as we conclude any one of the findings against Mother is supported by

10

sufficient evidence—whether challenged by her or not—we "need not consider" whether the other findings against her are supported by sufficient evidence, including consideration via an exercise of our discretion to decide a moot issue.[4]

Section 300, subdivision (b)(1)(A) authorizes a juvenile court to assume dependency jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . ." Our review of a juvenile court finding under this subdivision is for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Here, ample evidence supports the finding that Minors were at substantial risk of suffering serious physical harm from Mother's failure to protect them from Father's alcohol abuse— including his driving under the influence (see generally *In re N.R.* (2023) 15 Cal.5th 520, 540). Ca.M. described seeing Father drive drunk on multiple occasions, explaining, "'In the morning, if he's drinking and driving, he's fine[,] but at night, if he's drinking and

---

[4]   Naturally, we express no view on the scenario that is not presented in this case: when an appeal is moot because of unchallenged jurisdiction findings solely against a non-appealing parent. We also recognize there is an argument that Mother's failure to challenge the other jurisdiction findings against her forfeits any claim to have a reviewing court evaluate the sufficiency of the evidence for those findings. But we read *I.J.* to require some such discussion for at least one of the juvenile court's jurisdiction findings to trigger the rule that the reviewing court "need not consider" the other adverse findings against the appealing parent.

driving, he's drunk.'" Ch.M. reported Father "drinks beers all day long and throws up on it [sic]." Father had also previously been arrested for driving under the influence, a fact of which Mother was aware, and Mother smelled alcohol on Father before getting in the car with him as the driver after the Compton car show.

Having held the failure to protect from Father's alcohol abuse finding is supported by sufficient evidence, we decline to discuss Mother's challenge to the juvenile court's failure to protect from domestic violence jurisdiction finding.

**[Part II.B, below, is deleted from publication.  See *post* at p. 13 for where publication is to resume.]**

B.   *We Do Not Exercise Our Discretion to Decide Mother's Moot  Challenge to the Disposition Order Removing Minors from Her Custody*

"A reviewing court must '"decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot . . . ."' [Citation.]" (*D.P.*, *supra*, 14 Cal.5th at 276.)  Even when a dependency appeal is moot, courts "may exercise their 'inherent discretion' to reach the merits of the dispute." (*Id*. at 282, 285-286 [enumerating considerations to guide decisions on whether to exercise discretion to reach the merits of moot issues].)

According to juvenile court minute orders we have judicially noticed at Mother's request, the juvenile court found at a June 2023 review hearing that Mother made substantial progress in her case plan and ordered Minors returned to her custody.  Because the juvenile court has returned Minors to her

12

care, Mother's challenge to the juvenile court's detention and removal orders is moot: we cannot provide her with any effective relief in this appeal. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"]; *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].)

We acknowledge we have discretion to decide Mother's challenge to the order removing Minors from her custody even though it is now moot. (*D.P.*, *supra*, 14 Cal.5th at 287.) We have considered the non-exhaustive factors our Supreme Court has identified as relevant to the exercise of that discretion and conclude such an exercise is unwarranted in this case.

**[The remainder of the opinion is to be published.]**

DISPOSITION

The juvenile court's orders are affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**

BAKER, Acting P. J.

We concur:

MOOR, J.                                        KIM, J.

13